Evelyn V. Kanzelmeyer, Appellant, *v.* Milton J. Eger, A. Gay Shinaberry, Mark Hilliker, Robert Zappie, Lawrence C. Mezmar, Gaze Yoko, Joseph J. Calfrelli, Sam J. Taormina, Robert Cleary, All Members of the Board of Directors of Hopewell Area School District; Camillo A. Bonomi, Superintendent of Hopewell Area School District; and Lillian Curtiss, Secretary, Board of School Directors, Hopewell Area School District, Appellees.

Argued November 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS and BLATT. Judges KRAMER and WILKINSON, JR. did not participate.

*Robert E. Kunselman,* with him *Reed, Sohn, Reed & Kunselman,* for appellant.

*Eugene Morris,* for appellees.

OPINION BY JUDGE ROGERS, November 27, 1974:

The appellant, Evelyn V. Kanzelmeyer, a resident taxpayer of the Hopewell Area School District, sought to examine school district records to determine whether in April and May of 1972 certain professional employees had received pay for unexcused and unauthorized absences from work. She sought access to payroll registers, payroll vouchers and attendance records. Refused such access by the school district, she appealed to the Court of Common Pleas of Beaver County pursuant to Section 4 of the Act of June 21, 1957, P. L. 390, *as amended,* 65 P.S. §66.4, popularly known as the "Right to Know Law." At the hearing of the appeal in the lower court, the school district furnished the payroll registers. The court below held that the appellant was not entitled to examine the payroll vouchers or attendance records. At argument before us, the appellant conceded that she should not be given access to the payroll vouchers because these documents contain information to which such access is prohibited, restrained or forbidden by law. There remains, therefore, for our consideration only the question whether the court below properly ordered that the appellant should not be permitted to examine the attendance records.

Section 1(2) of the Act of 1957, *as amended,* 65 P.S. §66.1(2) (Supp. 1974-1975), defines a public record as: *"Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies,* materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided,

That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, *or which would operate to the prejudice or impairment of a person's reputation or personal security,* or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or state or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act." (Emphasis supplied.)

The employee attendance records of the school district are maintained on cards on which the principal of the school to which said employee is attached makes a daily record. At the end of each month the principal delivers the cards to the payroll department for use in ascertaining in the case of each employee whether his or her salary should be paid in full or "docked" for days absent without entitlement to compensation. The pertinent portions of the card are as follows:

Name of Employee | M T W T F M T W T F M T W T F M T W T F M T W T F M T W T F M T W T F M T W T F M T W T F | Sick Leave — Accum. Used Left | Dr.'s Cert | Death Family Immed Near R | Substitutes | General Remarks

Signature of Administrator

If we understand the lower court's opinion, it concluded that access to the attendance cards should be withheld because the revelation of illnesses and family deaths could impair the reputation or personal security of the employee and because under the heading "General Remarks" the employee's superior might record the fact that an absence was the result of "suspension for disciplinary reasons."

While a person of even ordinary sensitivity might reasonably desire that the record of his illnesses or deaths in his family be withheld from scrutiny by members of the public, we are unable to agree that the facts of illness or deaths of family members can operate to impair reputation or personal security. Illness and deaths in the family are not disreputable, and the phrase "personal security" does not mean "personal privacy," as the lower court seems to have concluded. Security commonly means a state of freedom from harm, danger, fear or anxiety,—a state not affected by another's knowledge of one's illness or bereavement.

Public employment has attractions, including the satisfaction of performing public service and, in the case of professional employees of public schools, protection from dismissal for whimsical reasons or no reason at all. One of the disadvantages of public employment is the requirement of public accountability by both employer and employee. The instant record clearly establishes that the appellant would be unable to ascertain whether the district had paid its employees for unauthorized absences without access to the attendance record cards. The cards are, therefore, plainly the kind of record intended to be made available to public examination by the "Right to Know Law." Considerations of privacy and confidentiality, as distinguished from regard for reputation and personal security, must yield to the public's right to know about and examine into its servants' performance of duty.

As noted, the lower court was concerned also that the attendance record card might reveal disciplinary action affecting the reputation or its concept of personal security. We find nothing in the record establishing that in fact a disciplinary action has ever been recorded on attendance record cards, much less that the cards for May and June of 1972 contained such information. The only intimation that disciplinary suspensions might be noted on the cards was the school business manager's answer "that is correct" to the following leading question asked him by the school district's counsel: "If an employee were suspended for disciplinary reasons, whereby an absence would occur, it would be similarly noted in the right-hand column as you have indicated in the previous illustration?" The attendance cards having been shown to be essential to an appropriate inquiry by a citizen, the school district then had the burden of proving that the cards could operate to impair reputation or personal security. The meagre testimony just referred to was insufficient for the purpose. It seems to us on this record that the attendance record cards of the Hopewell Area School District are less sensitive material than the welfare rolls and lists of names of applicants for accountancy certificates held to be public records in, respectively, *McMullan v. Wohlgemuth*, 2 Pa. Commonwealth Ct. 183, 282 A. 2d 741 (1971), *vacated on other grounds*, 444 Pa. 563, 281 A. 2d 836 (1971), and *Freedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A. 2d 75 (1973).

Finally, we discern no good reason why sensitive information should be recorded on so mundane a record as an attendance card. A mere reference on that card to other files, for which a claim for exemption from public examination could be properly made, should suffice for the district's record-keeping purposes. We would be reluctant to hold that a routine record should be withheld from public examination because the public

body chooses it as a place to memorialize its employees' misdeeds.

The orders of the lower court directing the school district to make available to the appellant the payroll registers and to refrain from making available to the appellant the payroll vouchers are affirmed; its orders directing the school district to refrain from making available the attendance record cards is reversed.