Fred Mergenthaler, Appellant *v.* Commonwealth of Pennsylvania, State Employes Retirement Board, Appellee.

238

Argued March 10, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three. Reargued December 6, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT and DISALLE.

*Thomas A. Beckley*, with him *Craig W. Bremer*, and, of counsel, *Beckley & Madden*, for appellant.

*Raymond Kleiman,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, JR., April 25, 1977:

This appeal arises under the "right to know" statute, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §66.1 et seq. Appellant is a resident and taxpayer of the Commonwealth of Pennsylvania, and President of the Pennsylvania Association of Retired State Employees (PARSE), a non-profit corporation, having as its purpose, *inter alia,* to foster the interests of current and retired employes of the Commonwealth of Pennsylvania in order to advance and promote such interests financially, socially and psychologically. On April 6, 1976, appellant requested access to the records of the State Employes Retirement Board (Board). Alternatively appellant requested that he be provided with a list of such persons at a reasonable expense. This request was refused by the Board on April 7, 1976. We disagree and reverse.

A Public Record is defined by the statute, 65 P.S. §66.1(2) as:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and

240

health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

Appellant contends first that the names and addresses of retired state employes are public records; and second, that it is inconceivable that a list of these names and addresses does not exist. The Board on the other hand contends: first, they are not required to furnish a list of names and addresses of retired persons under the "right to know" statute 65 P.S. §66.1 et seq.; second, that sufficient information is already available for inspection and copying to satisfy the requirements of the statute;[1] and third, that the release of the addresses would affect the personal security and reputation of the retirees.

The "right to know" statute, 65 P.S. §66.1 et seq. allows for four exceptions to its very general definition of Public Record, 65 P.S. §66.1(2). The first exception pertains to records involved in an investigation; the second, involves records to which access is unavailable due to "statute law or order or decree of court"; the third, prohibits access to records "which

---

[1] The sufficient information referred to by the Board are the minutes of Board meetings which are available to the public for copying. These minutes include the name, social security number, department retired from as well as the amount of the pension. The minutes do not contain, however, the addresses of the retirees.

would operate to the prejudice or impairment of a person's reputation or personal security"; the last exception, prohibits access to records which would cause the loss to the Commonwealth or any of its political subdivisions of Federal funds. The problem of interpreting the breadth of this definition and its exceptions has been faced by this Court on several occasions, necessitating a review of the relevant case law.

In *McMullan v. Secretary of Welfare*, 3 Pa. Commonwealth Ct. 574, 384 A.2d 334 (1971), *rev'd on other grounds sub nom., McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A.2d 888 (1973) appellants sought the names, addresses, and amounts of public assistance received by recipients in the County of Philadelphia. In that case the Department of Public Welfare argued that access was barred under the "right to know" statute and the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §401 et seq. This Court granted access under the "right to know" statute. On appeal, the Pennsylvania Supreme Court reversed,[2] holding that the Public Welfare Code barred access.[3] Nonetheless, it found the definition of "Public Record" under the "right to know" statute, 65 P.S. §66.1(2), to be broad enough to encompass the information sought.[4]

In *Friedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973), the records containing the names of the candidates for the Certified Public Accountant's Exam were sought. The purpose given for

[2] *McMullan v. Wohlgemuth, supra.*

[3] The Commonwealth in this case points to no statute prohibiting access to the records here sought and our research has disclosed none.

[4] We are not unmindful of the statement made by the Supreme Court that exception three (prejudice or impairment to reputation or personal security) was equally persuasive in foreclosing appellee's argument.

the inspection of the records was to allow persons engaged in conducting preparatory courses for the Exam to solicit patronage. Again, this Court was confronted with a reputation and personal security argument: that the list of candidates could be compared with the list of successful candidates and prejudice or impair the reputations of those who failed. The Court, however, held that such a list of names would not operate in and of itself so as to damage a candidate's reputation and, therefore, allowed access to the records.

In *Kanzelmeyer v. Eger*, 16 Pa. Commonwealth Ct. 495, 329 A.2d 307 (1974), a resident taxpayer sought access to school district records, particularly attendance cards, to determine whether certain professional employes had received pay for unexcused and unauthorized absences from work. The school district refused access to the attendance cards contending that the cards contained information as to illnesses, family deaths and possibly information that the absence was the result of a suspension for disciplinary reasons, which could impair or prejudice the reputation or personal security of the employes. We held that access should be allowed to the attendance records noting that:

> [T]he phrase 'personal security' does not mean 'personal privacy,' as the lower court seems to have concluded. Security commonly means a state of freedom from harm, danger, fear or anxiety,—a state not affected by another's knowledge of one's illness or bereavement.

*Id.* at 500, 329 A.2d at 310.[5]

In *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa. Commonwealth Ct. 599, 336 A.2d 920 (1975), after the Pennsylvania Crime Commission issued a report al-

---

[5] On the point that the attendance cards might contain notations pertaining to absence due to disciplinary suspension, the Court held that the record did not substantiate such an allegation.

leging widespread corruption in the Philadelphia Police Department (specifically naming 400 policemen), the Philadelphia Newspapers, Inc. demanded access to the payroll records of the Philadelphia Police Department. The demand was refused, the contention being that the payroll records in combination with the Pennsylvania Crime Commission report would operate to prejudice or impair the policemen's reputations and thus should be excluded under the "right to know" statute. In affirming the lower court's grant of access, we held:

> that it is our duty under the Act to determine only whether the public records themselves would operate to the prejudice or impairment of reputation not whether their use with other information might have such harmful consequence. Since the payroll records here sought are incapable of such harm they are not excepted from disclosure.

*Id.* at 605, 336 A.2d at 924.

Finally,[6] in *Young v. Armstrong School District,* 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975), when the school district proposed changes in the kindergarten schedule, complainant sought access to the list of the kindergarten pupils in order to contact the parents involved. The school district refused to allow access to the records contending first, that they were

---

[6] Though not on point, one further case should be mentioned. In *West Shore School District v. Homick,* 23 Pa. Commonwealth Ct. 615, 353 A.2d 93 (1976), a teacher sought access to his personnel file. Our decision focused on whether the personnel file was encompassed by the portion of the definition of public record, 65 P.S. §66.1(2), which pertains to "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons" a portion of the definition not dealt with in the cases cited herein. We held that the complete personnel file was not a public record under the "right to know" statute.

not public records and second, if they were public records, access is barred since the records might prejudice or impair the personal security of students or their parents, if the records fell into the hands of unscrupulous solicitors. The Court found that the records were indeed within the definition of Public Record in the "right to know" statute, 65 P.S. §66.1 et seq. and with regard to the possible prejudice or impairment of personal security held:

> [F]or us to equate a concept of privacy with the concept of 'personal security' would usurp the legislative prerogative of the General Assembly. We must assume that the legislature would have used clear and appropriate language had it intended such a result. The concept of personal security, we believe, involves protection from personal harm rather than protection from an invasion of privacy. To hold otherwise would render the Act nugatory. Moreover, we have held that for records to fall within the personal security exception they must be intrinsically harmful and not merely capable of being used for harmful purposes.

*Id.* at 207, 344 A.2d at 740.

Bringing all of this to bear on the facts of the case before us, we find that the names and addresses of retired state employes are encompassed by the very general definition of "Public Record" in the "right to know" statute, 65 P.S. §66.1(2). The Board's contention that information sufficient to satisfy the statute is already available, misses the point. The standard set by the statute is the definition of Public Record and the exceptions thereunder, which is the only yardstick by which all requests for information are measured.

The Board further contends that appellant should be barred access to the addresses because of possible

prejudice or impairment of the retirees' personal security. Specifically, the Board indicates the possible misuse of these names and addresses by unscrupulous solicitors. This same argument was made in *Young v. Armstrong School District, supra,* where Judge BLATT refused to equate the concept of *personal privacy* with *personal security* under the "right to know" statute. In *Kanzelmeyer v. Eger,* 16 Pa. Commonwealth Ct. at 500, 329 A.2d at 310, Judge ROGERS defined personal security as "freedom from harm, danger, fear or anxiety." Further, as we held in *Moak v. Philadelphia Newspapers, Inc., supra,* for records to fall within the personal security exception they must be "intrinsically harmful." The records requested by appellant cannot be said to place retirees in a state of "harm, danger, fear or anxiety," nor are they "intrinsically harmful," and, thus, are not encompassed by the personal security exception under the "right to know" statute.[7]

One final point which has a great deal of significance under this statute is whether the Board is required under the statute to furnish a list of the names and addresses of retired state employees to appellant or anyone else. This issue was answered in *Friedman v. Fumo, supra,* though, it was not raised by the parties, Judge ROGERS stated:

> We point out that the appellant may examine and inspect and, of course, make notes from the records. The Department is not required to prepare and furnish lists or other excerpts from the records, nor is appellant here making such a request.

*Id.* at 612, 309 A.2d at 76.

---

[7] It is important to note that the use for which the information was sought in *Friedman v. Fumo, supra,* was to solicit patrons for CPA review courses.

At argument the attorney for the Board stated that no list of names and addresses existed, there being no practical need for such list, and also, that while the Board did have the addresses of the retirees they were in files that contained confidential information. Assuming that this is true and following the approach taken by Judge ROGERS in *Friedman v. Fumo, supra,* we hold that appellant may have access to the records only after the confidential data has been removed, at appellant's expense. We find no duty on the Board under the statute which requires them to furnish a list or place their records in such a fashion as to facilitate solely the "right to know" statute.

Accordingly, we will enter the following

ORDER

Now, April 25, 1977, the adjudication of the State Retirement Board dated, April 7, 1976, refusing Fred Mergenthaler access to a list of retirees in order to copy such list is modified and the Board is hereby ordered to allow Fred Mergenthaler access to minutes of the Board meetings to obtain the names of retirees and to the *files* of retirees in order to obtain their addresses. Should it become necessary to remove confidential data from the files, this shall be done by the Board, at the expense of appellant, prior to the allowance of access to these files.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The appellant here seeks only two items of information from the State Employes' Retirement Board. He seeks (1) the names of retirees and (2) the addresses of retirees. Unlike the plaintiffs in *McMullan v. Wohlgemuth,* 444 Pa. 563, 281 A.2d 836 (1971), and its progeny cases, he does not seek any information relative to the disbursement of funds by any agency of the Commonwealth.

Appellant asserts his right to the information sought on the basis that a record of names and addresses of state retirees is a public record as defined in Section 1 of the so-called Right-to-Know Law, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §66.1 (2):

(2) 'Public Record.' Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

A list of the names and addresses of any group of persons is simply not encompassed by the definition

of "public record" and, accordingly, appellant is not entitled to such information under the provisions of the Right-to-Know Law.[1]

It has been the disbursement of public funds that has undergirded the decisions in this area,[2] with the exception of two cases, *Friedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973), and *Young v. Armstrong School District*, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975), which I now believe were incorrectly decided.

In *Friedman v. Fumo*, we permitted the inspection and copying of the list of persons who had taken the Department of State's examination for qualification as a certified public accountant. We did so on the reasoning that the Supreme Court, in *McMullan v. Wohlgemuth, supra* note 2, had concluded that the general definition of "public record" in the Right-to-Know Law was broad enough to encompass the records there sought, and we could perceive no distinction between the records of names of persons on welfare and lists of names of persons who have taken accountancy examinations. However, it seems to me that the distinction we overlooked was that in *McMullan* more was sought than a list of names of persons on welfare, namely, the respective amounts of public assistance disbursed from public funds, and it was this vital aspect of disbursement of public funds that qualified the information sought as a public record as that term has been defined by the Legislature.

After having decided *Friedman v. Fumo, supra,* it was quite understandable that we followed its holding in permitting access to a list of the kindergarten pu-

---

[1] 65 P.S. §§66.1-.4.

[2] *McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A.2d 888 (1973); *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa. Commonwealth Ct. 599, 336 A.2d 920 (1975); *Kanzelmeyer v. Eger*, 16 Pa. Commonwealth Ct. 495, 329 A.2d 307 (1974).

pils enrolled in the Armstrong School District. *Young v. Armstrong School District,* 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975). However, "just because a path is well beaten is no proof it's the right one."[3]

In *West Shore School District v. Homick,* 23 Pa. Commonwealth Ct. 615, 353 A.2d 93 (1976), we carefully analyzed the definition of "public record" and, in the words of the dissenters, "depart[ed] from the inclusive concept of 'public record' which we have applied in Friedman v. Fumo, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973) and again more recently in Young v. Armstrong School District, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975)."

I hold to the view that we should continue to adhere to the definition of "public record" which the Legislature placed in the Right-to-Know Law and "depart from the inclusive concept of 'public record' which we have applied in [Friedman and Young]."

Therefore, I file this dissent since I am now of the view that a list of names and addresses does not constitute a public record and the adjudication of the State Employes' Retirement Board refusing access to such information should be affirmed.

---

OPINION BY JUDGE WILKINSON, JR. following reargument, January 25, 1978:

This matter was before our Court on March 10, 1977 with a decision and order, dated April 25, 1977, as follows:

Now, April 25, 1977, the adjudication of the State Retirement Board, dated April 7, 1976, refusing Fred Mergenthaler access to a list of retirees in order to copy such list is modified and the Board is hereby ordered to allow Fred Mergenthaler access to minutes of the Board

[3] Salada Tag Lines.

meetings to obtain the names of retirees and to the *files* of retirees in order to obtain their addresses. Should it become necessary to remove confidential data from the files, this shall be done by the Board, at the expense of appellant, prior to the allowance of access to these files.

The opinion, together with a dissenting opinion by Judge MENCER, is reported in 33 Pa. Commonwealth Ct. 237, 372 A.2d 944 (1977). Cross-motions for reargument were granted and the case is before us for reconsideration having been re-argued.

We find no reason to modify our opinion or order as previously filed.

Accordingly, we enter the following

ORDER

Now, January 25, 1978, the order of this Court, entered April 25, 1977, in the above matter is confirmed.