550 A.2d 1375

John O. Vartan, t/d/b/a Independent American Investments, Petitioner *v.* Department of General Services, Respondent.

Argued September 15, 1988, before Judges PALLADINO and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Thomas P. Brogan,* with him, *Kevin J. McKeon, Malatesta, Hawke & McKeon,* for petitioner.

*Gary F. Ankabrandt,* with him, *P. Alan Zulick* and *William W. Warren, Jr.,* for respondent.

OPINION BY JUDGE PALLADINO, December 5, 1988:

John O. Vartan, t/d/b/a Independent American Investments, (Petitioner) appeals from a decision of the Department of General Services (DGS) denying his request for information under the Act of June 21, 1957 (Right To Know Act), P.L. 390, *as amended,* 65 P.S. §§66.1-66.4.

The record before us consists solely of Petitioner's letter requesting information and DGS's letter denying the requested information. The facts set forth below were supplied to us by respective counsel and are facts on which the parties are in agreement. *See Patients of Philadelphia State Hospital v. Department of Public Welfare,* 53 Pa. Commonwealth Ct. 126, 417 A.2d 805 (1980).

In March of 1986, DGS issued a Request for Proposals (RFP) for the leasing of 26,000 square feet of office space for the Department of Public Welfare (DPW). Petitioner submitted a proposal in response to the RFP. DGS rejected all proposals and issued a second RFP on December 15, 1986. Petitioner again submitted a proposal; DGS again rejected, without explanation, all proposals. In June, 1987, DGS issued a third RFP to lease

office space for DPW.[1] In September, 1987, DGS notified Petitioner that it had selected the proposal of a bidder other than Petitioner.

Shortly after learning that his bid had not been accepted by DGS, Petitioner, via his counsel, sent a letter to DGS requesting information. The letter provided, in pertinent part:

We are in receipt of your letter dated September 23, 1987. On or before October 9, 1987 please provide us the following information:

1. The name and address of the selected respondent.

2. A copy of the complete proposal.

3. The delineation of the site and proof of ownership of the proposed site.

4. Plans and specifications of the proposed building.

5. The number of respondents for existing space and the number of respondents for new space.

6. Copies of all Department of General Services (DGS) internal memoranda relating to the selection of the successful proposal.

7. Copies of communications with the Department of Public Welfare (DPW) and DGS relating to all proposals.

8. A summary of the substance of the conversations and meetings between DGS and DPW relating to all proposals.

9. Copies of all correspondence with the successful respondent.

---

[1] It seems that the first two RFPs were identical in that they were for 26,000 square feet of space. However, the third RFP was for 36,000 square feet of office space. The change in space requirements does not appear to be of any relevance to the present dispute.

10. The dates of all conversations and meetings with the successful respondent both with DGS or DPW.

11. A summary of the substance of the conversations and meetings with the successful respondent both with DGS or DPW.

12. Dates of all conversations and meetings between any Commonwealth entity or employee and employees of DGS and DPW relative to any of the submitted proposals.

DGS responded with a letter stating that the requested information did not fall within the definition of public records contained in the Right To Know Act; thus, DGS declined to provide access to the information. Petitioner then petitioned this court for review of the denial.

In April of 1988, while Petitioner's appeal was pending, DGS executed the lease[2] which had been the subject of the successful proposal. DGS states in its brief, and Petitioner conceded at oral argument, that, following the execution of the lease with the successful bidder, DGS sent Petitioner's counsel the following information: (1) a copy of the lease; (2) the successful proposal to lease space; (3) site delineation; and (4) proof of ownership of the site. DGS also agreed that Petitioner was entitled to inspect the plans and specifications of the building to be occupied by DPW.

The issue before us is whether the information requested by Petitioner falls within the definition of public records contained in the Right To Know Act. Section 1 of the Right To Know Act defines public record as:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services

---

[2] DGS states in its brief that the lease was executed in April, 1988.

or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons. . . .[3]

65 P.S. §66.1.

In his brief, Petitioner has separated into four categories the information he seeks to review.[4] The four categories are as follows: (1) the proposal selected—encompassing the information requested in numbers 1, 2, 3, and 4 of Petitioner's letter; (2) a list of those submitting proposals in response to the RFP—encompassing the information requested in number 5 of Petitioner's letter;[5] (3) DGS correspondence—encompassing the information requested in number 9 of Petitioner's letter; and (4) memoranda—encompassing the information requested in numbers 6, 7, 10 and 12 of Petitioner's letter. We need not review the issue of whether the information requested in category (1) falls within the definition of public record inasmuch as DGS has made that information available to Petitioner.

Petitioner asserts that the list of respondents requested in category (2) constitutes a public record because this court has often stated that lists of names, or documents from which lists can be compiled,[6] are pub-

---

[3] The definition contains certain exceptions. DGS does not argue that any of the exceptions are applicable.

[4] Petitioner has elected not to pursue his request for the information in numbers 8 and 11 of his letter.

[5] *See infra* note 7.

[6] We note here that DGS contends it has no list of those responding to the RFPs and that, under *Hoffman v. Pennsylvania Game Commission*, 71 Pa. Commonwealth Ct. 99, 455 A.2d 731 (1983), it cannot be forced to compile a list. DGS makes much of the form of Petitioner's request, arguing that Petitioner, by requesting that DGS compile a list not in existence, has somehow waived any right he might have to review records from which he

lic records. Petitioner directs our attention to *Friedman v. Fumo,* 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973) (list of persons who had taken the examination to qualify as Certified Public Accountants); *Kanzelmeyer v. Eger,* 16 Pa. Commonwealth Ct. 495, 329 A.2d 307 (1974) (attendance records of school district employees); *Young v. Armstrong School District,* 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975) (list of names and addresses of kindergarten children); *Mergenthaler v. Pennsylvania State Employes' Retirement Board,* 33 Pa. Commonwealth Ct. 237, 372 A.2d 944 (1977), *confirmed,* 33 Pa. Commonwealth Ct. 249, 381 A.2d 1032 (1978) (names and addresses of retired State employees); and *Hoffman v. Pennsylvania Game Commission,* 71 Pa. Commonwealth Ct. 99, 455 A.2d 731 (1983) (subscriber mailing list for the *Pennsylvania Game News*).

A review of the above cases reveals that the list sought by Petitioner is not significantly different from lists we have previously ordered disclosed. DGS has not presented us with any compelling differences between the list sought here and the information noted in the cases cited above. Accordingly, our prior decisions mandate that the information sought by Petitioner[7] be available for public inspection.

---

could compile a list of those responding to the RFPs. Although we agree with DGS that it cannot be compelled to develop a list for a requestor's benefit, we do not believe the form of the request is determinative of the issue. An appropriately fashioned court order protects a holder of public records from being required to compile a list. *See Mergenthaler v. State Employes' Retirement Board,* 33 Pa. Commonwealth Ct. 237, 372 A.2d 944 (1977), *confirmed,* 33 Pa. Commonwealth Ct. 249, 381 A.2d 1032 (1978).

[7] Although Petitioner's letter did not specifically request a list of those responding, his brief characterizes the request as such. DGS's brief demonstrates that DGS is not prepared to disclose the requested "list." In the interest of judicial economy, we have ac-

Petitioner's arguments with respect to the information covered by categories (3) and (4) can be dealt with together, inasmuch as Petitioner's arguments with regard to these two categories are the same. Specifically, Petitioner asserts that the requested correspondence and memoranda form the basis for DGS's decision to select another bidder. Petitioner argues that any information which forms the basis for an agency decision is, per se, an agency "decision,"[8] and, therefore, must be disclosed.

A review of the relevant caselaw indicates that we have often found documents to be public records if they form the basis for an agency decision. In *Young*, we held that a list of kindergarten pupils enrolled in the Armstrong School District was a public record. We agreed with the trial court that the list was the sort of record which would provide a basis for determining the location of the school a child would attend, room assignments, session assignments and transportation needs.

In *Patients of Philadelphia State Hospital*, we held that a Joint Commission on the Accreditation of Hospitals (JCAH) report was a public record because the report would provide the basis for a DPW decision on whether to approve a State facility. DPW regulations provided that compliance with JCAH requirements was a prerequisite to a DPW decision approving a State psychiatric institution. We concluded that the JCAH report was an *essential component* of a DPW decision and was, therefore, a public record.

---

cepted the characterization of the request as it appears in Petitioner's brief.

[8] We note that because of the state of the record we are not able to ascertain whether any correspondence and memoranda even exist. However, we will assume for the purposes of argument that such documents do exist.

In *Pennsylvania Association for Children and Adults With Learning Disabilities v. Department of Education,* 91 Pa. Commonwealth Ct. 531, 498 A.2d 16 (1985), we held that statistical data on the racial and ethnic composition of programs for exceptional children constituted a public record. We reasoned that the statistical data was information compiled by the Department of Education pursuant to an obligation imposed by regulations, and was therefore a decision of the Department.

Our reading of these cases persuades us that the information sought by Petitioner in the present case does not constitute a public record. Correspondence and memoranda are not lists, compilations of facts or statistical data. Petitioner has not shown that any correspondence or memoranda formed the basis for DGS's determination, and it is certainly not clear that the information sought was an essential component of DGS's decision to award the lease to a particular bidder. The broad definition we have accorded public record is not without limit, and we do not believe that a requestor need merely allege the possibility that information had some impact on an agency decision.

Accordingly, the DGS decision denying access to correspondence and memoranda is affirmed.

### ORDER

AND NOW, December 5, 1988, the decision of the Department of General Services in the above-captioned matter is reversed in part and affirmed in part. The Department of General Services is directed to promptly and efficiently afford the Petitioner access to materials from which Petitioner can compile a list of the names of those who responded to the Department's Request for Proposals.

The decision of the Department of General Services is affirmed in all other respects.

Judge MacPhail did not participate in the decision in this case.

Judge Smith dissents.