## Morning Call Inc. v. Lower Saucon Township

*Malcolm Gross,* for plaintiffs.
*Nicholas Noel III,* for defendants.

FREEDBERG, *P.J.,* August 13, 1992—This matter is before the court on a statutory appeal pursuant to section 4 of the Right to Know Law, 65 P.S. §66.4. Plaintiffs are *The Morning Call, Inc.,* a newspaper of general circulation in Northampton County and Richard Cowen, a reporter for *The Morning Call, Inc.* They have filed this appeal seeking to obtain information about a settlement of a federal civil rights action by John A. Werner against Lower Saucon Township. Werner claimed that his civil rights had been violated by two Lower Saucon Township police officers.

The federal lawsuit was settled in January, 1992. Werner received a payment of money from the township's liability insurance carrier. The township claims, without contradiction, that it paid no money directly to Werner but that it did pay a $5,000 deductible to its liability insurance carrier. A provision of the settlement agreement between the township and Werner prohibits release of any information concerning the settlement. There was no order of the federal court requiring confidentiality.

Both the township and Werner object to release of the information about the settlement to *The Morning Call* and Cowen. *The Call* and Cowen contend that the settlement agreement is a "public record" within the meaning of the Right to Know Law, 65 P.S. §66.1, which defines a "public record" as follows:

"Any ... contract dealing with the receipt or disbursement of funds by an agency ... and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person...."

Also relevant to the *Call's* and Cowen's contentions is the open meeting provision of the Sunshine Act, 65

P.S. §271 et seq. That act describes "agency business" as including "the creation of liability by contract." "Agency business" constitutes "official action" which must be conducted in public unless exempted by a provision of the Sunshine Act. 65 P.S. §274. While executive sessions are permitted pursuant to 65 P.S. §278 to allow the agency to consult with an attorney regarding pending litigation, it is expressly required that official action on discussions held pursuant to the matters so discussed shall be taken at an open meeting. 65 P.S. §278(c).

The township contends that the settlement agreement is not a "public record" as defined in the Right to Know Law because the township paid no money to Werner; rather, any payment was made by the township's liability carrier. The township also argues that the settlement does not fix the personal or property rights of John A. Werner. Finally, the township argues that disclosure of the settlement violates the "long-standing policy of Pennsylvania courts in promoting settlements." Thus, the township argues that disclosure of the terms of the Werner settlement may hamper future negotiations in other cases because other parties would learn what the township was willing to pay to settle a case of this nature.

Werner opposes disclosure of the terms of the settlement asserting a privacy interest in the information to protect him from harassment by others who would learn of his receipt of the funds. Werner also claims that the Sunshine Act, which permits executive sessions for discussions about strategy in connection with litigation, precludes disclosure of the settlement agreement.

Our scope of review under the Right to Know Law is limited to determining whether the township's denial

of the request for the desired information was for just and proper cause. 65 P.S. §66.4; *Aamodt v. Commonwealth of Pennsylvania, Department of Health,* 94 Pa. Commw. 54, 502 A.2d 776 (1986). The issue in a case under the Right to Know Act is whether the material sought is a "public record." *Marvel v. Dalrymple* 38 Pa. Commw. 67, 393 A.2d 494 (1978). The right to examine is not dependent upon any other personal or property right, privilege or immunity that a citizen may otherwise enjoy but rather whether the documents sought in the case are within the definition of a "public record." Therefore, "a broad construction adheres, ... to an initial determination that a document is a 'public record,' to be tempered as an opposing party brings into play the enumerated exceptions." *Marvel v. Dalrymple, supra* at 72, 393 A.2d at 497.

We conclude that the settlement agreement is a "public record" within the meaning of the Right to Know Law. Thus, it is a "contract dealing with the ... disbursement of funds by an agency...." Federal civil rights litigation was filed by Werner against Lower Saucon Township, not against the township's insurer. Thus, the settlement agreement imposes obligations upon the township and is enforceable against the township. "An insurance policy is 'a special agreement of indemnity with the person insuring against such loss or damage as he may sustain.' " *First National Bank of Jessup v. Cappellini,* 149 Pa. Super. 14, 26 A.2d 119 (1942). Unlike suretyship wherein there is a three-party relationship in which the surety undertakes to perform to the promisee only if the principal promisor fails to do so, indemnity involves a two-party relationship in which the indemnitor undertakes to save a promisee harmless from loss. 18 P.L.E. Indemnity, §2.

An injured third party has no direct action against the insurers of an alleged tortfeasor unless such a right has been created by statute or provided for by the policy in question. *Folmar v. Shaffer,* 232 Pa. Super. 22, 332 A.2d 821 (1974). Thus, the township's attempt to characterize the settlement agreement as something other than a contract dealing with the disbursement of funds by it is inconsistent with the nature of a contract of insurance. Further, the township's argument fails because it concedes that it paid a $5,000 deductible to the carrier in this matter. Finally, we note that claim payment experience impacts on premiums. Thus, the settlement agreement is a contract dealing with the disbursement of funds by the township. Since none of the exceptions encompassed within 65 P.S. §66.1 apply, we conclude that the settlement agreement entered into between Werner and the township constituted a "public record" within the meaning of the Right to Know Law. Given this conclusion, we need not pass on the alternative contention that the settlement agreement is a "public record" because it fixes personal or property rights.

An alternative basis supporting *The Morning Call's* and Cowen's contentions that the settlement agreement should be disclosed is found in the Sunshine Act, 65 P.S. §271 et seq. While the township officials had the right to discuss settlement of the litigation in executive session, the Sunshine Act requires that they return to an open meeting to vote on whether or not to enter into the agreement. *Mirror Printing Co., Inc. v. Altoona Area School Board,* 148 Pa. Commw. 168, 609 A.2d 917 (1992); see also, *Keenheel v. Pa. Securities Commission,* 134 Pa. Commw. 494, 579 A.2d 1358 (1990). Clearly, the public has a right to know the terms of the settlement agreement. 65 P.S. §278(c).

That Werner and Lower Saucon Township agreed to keep the settlement agreement confidential does not control the rights of the public. Statutorily mandated disclosure cannot be overcome merely by a showing of a private agreement.

The township asserts that disclosure of the terms of the settlement will violate a "long-standing policy of Pennsylvania courts in promoting settlements." Specifically, the township argues that disclosure of the terms of settlements, as in the *Werner* case, will discourage the township from entering into settlements in the future because such disclosure will put the township at a disadvantage in dealing with other potential claimants who will learn how the township values such cases. We find it dubious that the township will decline to enter into a settlement that it thinks appropriate merely because others may learn of the value that it places on such cases. Further, even if this were true, the "long-standing policy" cannot control in the face of explicit statutory mandate that the information be disclosed to the public. Thus, we find the reasoning of the Supreme Court of Alaska in *Anchorage School District v. Anchorage Daily News,* 779 P.2d 1191 (Alaska 1989), persuasive:

"We recognize also that some litigants are unwilling to settle unless the terms of settlement remain confidential and that a municipality's inability to assure confidentiality may, therefore, adversely affect its ability to negotiate a settlement. Nevertheless, the specific statutory provisions upon which the *Daily News* relies reflect a policy determination favoring disclosure of public records over the general policy of encouraging settlement. *The people of this state, through their elected representatives, have stated in the clearest of terms that it is more important that to have access to this*

*type of information than that it remain confidential.* Thus we hold that a public agency may not circumvent the statutory disclosure requirements by agreeing to keep the terms of the settlement agreement confidential."

See also, *Bank of America National Trust and Savings Assn. v. Hotel Rittenhouse Associates,* 800 F.2d 339 (3rd Cir. 1986), wherein it was held that a settlement agreement reached between private parties which was filed under seal in the United States District Court must be disclosed to a third party in the litigation in spite of a confidentiality agreement. In that case the majority opinion concluded "the generalized interest in encouraging settlements does not rise to the level of interests that we have recognized may outweigh the public's common law right of access." *Id.*

Werner contends that his privacy interest requires that the confidentiality of the settlement be maintained. The Right to Know Law does not recognize concerns that one might be harassed by others who learn of the details of his financial settlement as a basis for denying public access to this information. Thus, the personal security exception of the Right to Know Law has been limited to protection from personal harm rather than protection from invasion of privacy. *Mergenthaler v. Commonwealth of Pennsylvania, State Employees' Retirement Board,* 33 Pa. Commw. 237, 372 A.2d 944 (1977), *confirmed,* 33 Pa. Commw. 237, 381 A.2d 1032 (1978). Nor is the settlement agreement "intrinsically harmful" as records must be to come within the personal security exception. *Moak v. Philadelphia Newspapers, Inc.,* 18 Pa. Commw. 599, 336 A.2d 920 (1975). Further, there has been no showing of the kind of strong, countervailing reasons to the presumption in favor of access which might justify maintenance of the privacy of settlement documents as in *Minneapolis Star and Tribune*

*Co. v. Schumacher,* 392 N.W.2d 197 (Minnesota Supreme Ct. 1986); see also, *Beaver v. McColgan,* 11 D.&C.4th 97 (1990).

Finally, we note that our decision that the settlement documents ought to be released is in accord with substantial authority from other jurisdictions. See *Anchorage School District v. Anchorage Daily News, supra* (requiring disclosure of terms of confidential settlement agreement between school district and private party relating to damages incident to improper construction of a school); *Miami Herald Publishing Co. v. Collazo,* 329 So.2d 333 (Fla. Dist. Ct. App.), *cert. den.* 342 So.2d 1100 (Fla. 1976) (requiring disclosure of settlement terms in action by individual against municipality for conduct of police officer);[1] *Dutton v. Guste,* 395 So.2d 683 (La. 1981) (requiring disclosure of the terms of a confidential settlement agreement between the State of Louisiana and various architects and engineers arising from a suit alleging liability for defects in design and construction of a sports stadium); *The News and Observer Publishing Co. v. Wake County Hospital System, Inc.,* 284 S.E.2d 542 (N.C. Ct. App. 1981) (requiring disclosure of the terms of confidential settlement agreements reached in action by medical professional association for wrongful termination against an incorporated county hospital system); and *The Daily Gazette Co., Inc. v. Withrow, Sheriff,* 350 S.E.2d 738 (W.V. 1986) (requiring disclosure of the terms of settlement of federal civil rights action based upon alleged acts of sheriff and his employees for

---

1. The court in *Miami Herald* stated that the right to know the settlement terms is particularly compelling in a case involving alleged police misconduct both because of the financial impact on the community with respect to future insurance rates and because the allegations of official misconduct are "by their very nature newsworthy."

wrongfully discharging a deputy sheriff). See also, *Annotation, What Are "Records" of Agency Which Must be Made Available Under State Freedom of Information Act,* 27 A.L.R. 4th 680, §16 (1984).

In conclusion, we hold that a settlement agreement between a private party and a public agency which concludes civil litigation must be disclosed pursuant to the Right to Know Law and the Sunshine Act. A confidentiality provision cannot prevent public access to the terms of the settlement. The access must be accorded even if the agreement has not been filed with the court.

Wherefore, we enter the following:

## ORDER

And now August 13, 1992, the appeal of *The Morning Call, Inc.,* and Richard Cowen is sustained. Lower Saucon Township shall disclose the terms of the settlement of litigation commenced against it by John A. Werner at 91-0313 C.D. Pa. and shall provide appellants with a copy of the agreement.